**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CLIFFORD ABILHOMME,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC.,<br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br><br>Defendants. | ) | Civil Action No. ____________<br><br>**COMPLAINT**<br>**WITH JURY TRIAL DEMAND** |

**PRELIMINARY STATEMENT**

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act 15 U.S.C. § 1681, *et seq.* (the "FCRA") to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

2. Under the FCRA, consumer reporting agencies are charged with two primary duties: the duty to follow reasonable procedures to assure maximum possible accuracy of information when preparing consumer reports; and the duty to reasonably reinvestigate consumers' disputes of inaccurate information.

3. Defendants compiled, maintained, and reported information concerning Plaintiff's creditworthiness, credit-standing, credit capacity, character, and general reputation. Then, that information was made available for use by third parties in credit transactions involving Plaintiff, for employment purposes, the underwriting of insurance for Plaintiff, and even in connection with a determination of Plaintiff's eligibility for a license or other governmental benefit. Accordingly,

and pursuant to various provisions of the FCRA, Plaintiff has a legally protected interest in Defendants fulfilling their respective duties under the FCRA, so that the information reported and maintained by Defendants is done so in a manner which is fair and equitable to Plaintiff, with regards to the confidentiality, accuracy, and relevancy of that information.

4. This action for damages is based on Defendants' false reporting on Plaintiff's credit file and/or consumer reports, and failures to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff.

**PARTIES TO THIS ACTION**

5. Plaintiff, Clifford Abilhomme, is a natural person who resides in the state of New York and is a "consumer" as that term is defined at 15 U.S.C. § 1681a(c).

6. Defendant, Equifax Information Services, LLC ("Equifax"), regularly assembles consumer credit information for the purpose of preparing consumer reports to furnish to third parties using interstate commerce. Accordingly, Equifax is a "consumer reporting agency" as that term is defined by FCRA at 15 U.S.C. § 1681a(f).

7. Defendant, Portfolio Recovery Associates, LLC ("PRA") is a debt collector headquartered in Norfolk, Virginia and one of the largest debt collection companies in the United States. PRA furnishes debtor's information to consumer reporting agencies and is a "furnisher" governed by FCRA at 15 U.S.C. § 1681s-2.

**JURISDICTION AND VENUE**

8. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p, U.S.C. § 1692k and 28 U.S.C. § 1331.

9. This Court has personal jurisdiction over Defendant because Defendant regularly conducts business in this District and purposefully directed its activities toward residents of this District .

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## ALLEGATIONS OF FACT

11. Mr. Abilhomme was in the market for credit and requested his credit file from Equifax and upon receipt of that file, he discovered several inaccuracies contained therein.

12. The furnishers of those inaccuracies include but are not limited to defendant PRA and non-parties Merrick Bank, Atlantic Capital Bank Self and Credit Collections.

### *The PRA Collection Account*

13. Equifax reported Mr. Abilhomme had a credit account (e.g. revolving accounts, mortgage accounts, installment loans, etc.) with a company that he never heard of, let alone did he apply and obtain credit from.

14. The company that wrongfully reported the credit account is the defendant PRA, which is a debt collector.

15. Notably, a debt collector does not lend money to consumers, and never issues a credit account, such as installment accounts, revolving accounts (i.e. credit cards, lines of credit), mortgage accounts or any type of credit for that matter.

16. By reporting that Mr. Abilhomme had a credit account with a debt collector, Equifax misrepresented that he obtained a loan or credit from PRA.

17. Equifax's report was inaccurate because Mr. Abilhomme did not have a credit account with PRA. Nor did he owe any money to PRA.

18. Due to an error in their reporting mechanism, PRA *always* report debts in a manner that misrepresents the character and/or type of the debt and results in each reported debt appearing as a credit account instead of a collection account.

19. Equifax knows PRA furnishes inaccurate information when it represents that it is a creditor collecting on a credit account.

20. Despite being aware of PRA's systemic inaccurate reporting, Equifax has failed to adopt and/or implement procedures to prevent errors from appearing or remove the errors in consumer reports that stem from PRA's erroneous reporting.

21. PRA has not fixed the problem at its end because of the costs that it would incur to change its reporting procedures.

22. Further, PRA has elected not to change its reporting procedures because it benefits from having collections appear as credit accounts.

23. Specifically, a large percentage of the debts reported by PRA are either debts that it does not own, or debts that the debtors do not owe. When compared to collection accounts, a debtor is less likely to challenge and more likely to pay a debt appearing as a credit account.

24. A collection listed as a credit account causes confusion and that confusion often leads to debtors paying debts that they do not owe.

25. PRA is notorious for using such underhanded tactics. In 2015 the Consumer Financial Protection Bureau sued PRA for "collecting on unsubstantiated debt, collecting on debt without providing required documentation and disclosures to consumers, suing or threatening legal action against consumers without offering or possessing required documentation, and suing to collect on debt outside the statute of limitations. Portfolio Recovery Associates also failed to

properly investigate and resolve consumer disputes about the company's credit reporting."[1] And in 2023, "[a]fter getting caught red-handed in 2015, Portfolio Recovery Associates continued violating the law through intimidation, deception, and illegal debt collection tactics and lawsuits."

26. Both Equifax and PRA believe they can get away with their illegal conduct because the general profile of the affected debtors are marginalized people without adequate resources to mount a serious challenge them.

27. The FCRA requires that Equifax clearly and accurately disclose all information in a consumer's file upon request from such consumer.

28. Although PRA misclassifies collection accounts as credit accounts when it reports debts to Equifax, PRA does report that it is a debt buyer and identifies an original creditor.

29. Despite receiving information on a purported original creditor, Equifax did not disclose the information on the original creditor to Mr. Abilhomme.

30. According to the Consumer Data Industry Association ("CDIA"), the industry leading organization for furnishers and consumer reporting agencies, the "original creditor is required for collection agencies" and "must be present each time the account is reported."

31. Further, the CDIA states the "purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports."

32. Continuing, the CDIA notes that "[w]ithout the original creditor names, consumers may not know what the accounts represent."

33. Thus, Equifax knows that it is required to report the original creditor's name and its' failure to do so will cause consumers not to recognize the account.

[1] CFPB Orders Repeat Offender Portfolio Recovery Associates to Pay More Than $24 Million for Continued Illegal Debt Collection Practices and Consumer Reporting Violations | Consumer Financial Protection Bureau https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-portfolio-recovery-associates-to-pay-more-than-24-million-illegal-debt-collection-practices-reporting-violations/

34. Notably, the two other national consumer reporting agencies, Experian and Trans Union, have abided by the CDIA's edicts and implemented procedures that assure the original creditor name is included in all collection accounts that appear in their reports.

35. In lawsuits against Trans Union, the consumer reporting agency has described a procedure to assure maximum accuracy that reviews all METRO II data for format errors like "data with mandatory fields that are blank" or "for anomalies in content (such as a creditor who normally reports 10% of its accounts as in collection suddenly reporting 90% of its accounts in collection" prior to the data being loaded to the database.

36. If Equifax had made the same investment in its procedures that were made by both Experian and Trans Union, then Equifax's credit reports would not be littered with collection accounts that do not contain the original creditor's name.

37. Nonetheless, Equifax continues to knowingly omit the original creditor's name because Equifax does not want to incur the costs of implementing a procedure to correct a debt collector's misclassification of the account.

38. While Equifax does not want to incur the cost of correcting the problem, Equifax continues to accept information from unreliable debt collectors because a significant source of Equifax's income is derived from these very same debt collectors.

39. Equifax has conducted a cost-benefit analysis on whether to incur the costs to fix the error or to apportion a small percentage of those would-be costs to litigating claims brought by aggrieved consumers that fell victims to its conduct.

40. In choosing to litigate rather than correct, Equifax was motivated to adopt and act on an interpretation of section 1681g that gave it grounds to litigate a defense against the claims that consumers were bound to bring against Equifax for its intentional violations of the FCRA.

41. Because the language in section 1681g and the obligations of a credit reporting agency that arise from the said language are unambiguous, to give cover to an otherwise indefensible defense, Equifax had to purposely adopt a reading of § 1681g that contravened the clear objective and instruction of the statute.

42. To achieve its purpose of adopting an interpretation of § 1681g that gave it cover and/or plausible denial, Equifax reads in an accuracy obligation in § 1681g where there is absolutely no language to support such reading.

43. Specifically, while the statue clearly reads "All information in the consumer's file at the time of the request" must be "clearly and accurately disclose[d] to the consumer," § 1681g(a)(1)(A), Equifax claims that § 1681g only covers inaccurate information.

44. The Supreme Court has instructed that entities governed by FCRA to steer away from interpretations of the FCRA that have no foundation based in the language of the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

45. There is no language in § 1681g to support Equifax's interpretation that § 1681g governs only information that is inaccurate.

46. Further, the Supreme Court has instructed anyone governed by the FCRA to heed the warnings and/or holdings of the circuit courts of appeals when it comes to interpreting duties under the FCRA. And the Second Circuit stated, albeit in an unpublished opinion, that "§ 1681g requires consumer reporting agencies to 'clearly and accurately disclose ... [*a*]*ll* information,' not *all accurate information*." *Selvam v. Experian Information Solutions, Inc.*, 651 Fed. Appx. 29, 33 (2d Cir. 2016) (citing 15 U.S.C. § 1681g(a) (emphasis in original).

47. The *Selvam* opinion was rendered in 2016, so Equifax has been on notice, from the Second Circuit, that its interpretation of section 1681g(a) was inaccurate for nearly 10 years.

48. Additionally, during that same period, in 2015, Equifax was sued by 30+ state attorney generals for, among other things, failing to report the original creditor. More particularly, as a result of the state attorneys' litigation, Equifax agreed to "revise training materials and adopt policies and procedures to notify and instruct Collection Furnishers that the name of the Original Creditor … [is a] mandatory reporting requirement[], and [Equifax] shall reject data that is not provided with the name of the Original Creditor."[2]

49. Moreover, Equifax has *direct* knowledge that its decision to omit the identity of original creditors when reporting a collection account is causing serious harm to consumers. In a recent lawsuit in the Middle District of Florida, Equifax admitted that its failure to report the name of the original creditor in collection accounts has led to "numerous other lawsuits filed against Equifax." *Clarke v. Equifax Information Services, LLC*, No. 8:25-cv-01499, ECF No. 20, fn. 1 (M.D. Fla. Oct. 1, 2025) (citing *Aguirre v. Equifax Information Services LLC*, 0:25-cv-61099 (S.D. Fla. June 3, 2025); *Williams El v. Equifax Information Services LLC*, 8:25-cv-01930 (D. Md. June 16, 2025); *Madaris v. Equifax Information Services LLC et al.*, Case No. 1:25-cv-00503 (S.D. Ohio June 17, 2025).

50. And based on a review of Pacer for cases filed against Equifax, consumers have been suing Equifax for failing to report the original creditor for a decade or so.

51. Considering Equifax has not corrected this error after being sued by consumers for many years, the costs of litigating these lawsuits for Equifax have not been sufficient to actually deter it from continuing to violate the FCRA.

52. Therefore, a substantial punitive damages award is in tow to be levied against Equifax so that it is deterred from violating the FCRA in the future.

[2] https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx

***Atlantic Capital Bank Self Tradeline***

53. Equifax is reporting that Mr. Abilhomme has an unpaid debt with Atlantic Capital Bank Self (hereinafter, "Self").

54. In April 2021, Mr. Abilhomme paid the debt in full, leaving no past due amount.

55. Self reported to Equifax as well as the other CRAs that Mr. Abilhomme had paid the debt and that there was no past due amount owed.

56. As a result of Self's reporting on the account, Equifax knew the debt had been paid and that there was no past due amount.

57. Nonetheless, Equifax reported that the account had not been paid and was past due.

58. The other CRAs reported that the Self account was paid with no amount past due.

59. Not only does Equifax report the account is past due, but Equifax reports the terms of the account, i.e. monthly obligation, is still in effect.

60. Equifax's inaccurate reporting of the Self account is the result of another defect in its reporting platform that it refuses to expend necessary resources to correct.

***Merrick Bank Tradeline***

61. Equifax is reporting an unpaid charge-off account furnished by Merrick Bank to Mr. Abilhomme's credit file.

62. The Merrick Bank tradeline contains material omissions that render the account to be materially incomplete.

63. Specifically, Equifax disclosed a credit file that did not include the scheduled payment amount or date the account was closed.

64. Equifax knows the omitted information is material and important to consumers because the organization charged with setting the industry standard, the Consumer Data Industry Association ("CDIA"), instructs the CRAs to report each of the items that Equifax omitted.

65. The Scheduled Monthly Payment Amount should be reported as $0.00 based on CDIA's instructions.

66. Upon information and belief, Merrick Bank reported to Equifax that the Scheduled Monthly Payment Amount was $0.00.

67. The Date Closed should report the date the account was closed to further purchase/ use based on CDIA's instructions.

68. Upon information and belief, Merrick Bank furnished the date that the account was closed to further purchase or use.

*Collection Account Furnished by Credit Collections*

69. Equifax reported Mr. Abilhomme has a collection account with Credit Collections.

70. The collection identifies a purported unpaid balance that was due to Geico.

71. The collection account did not provide the most basic information regarding the purported account.

72. Based on the information reported the purported collection cannot be verified.

***Mr. Abilhomme's Written Disputes to Equifax***

73. Mr. Abilhomme disputed the PRA collection with Equifax.

74. PRA received notice of Mr. Abilhomme's dispute from Equifax.

75. Aside from forwarding the disputes to PRA, Equifax did nothing in response to Mr. Abilhomme's dispute(s).

76. Not only did Equifax *not* investigate Mr. Abilhomme's dispute(s), but Equifax also did an inadequate job describing the dispute to PRA.

77. PRA failed to do a reasonable investigation of Mr. Abilhomme's dispute.

78. Although Equifax provided PRA with a copy of Mr. Abilhomme's dispute, PRA did not consider his dispute letter as part of its investigation.

79. In order to adequately investigate Mr. Abilhomme's dispute, PRA was required to contact the original creditor.

80. However, PRA did not contact the original creditor as part of its investigation of Mr. Abilhomme's dispute.

81. Had either PRA or Equifax carried out a reasonable investigation of Mr. Abilhomme's disputes, they would have determined the collection should have been deleted.

## COUNT I
## VIOLATIONS OF THE FCRA 15 U.S.C. § 1681e(b)

82. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports.

83. As a result of Equifax's violations of 15 U.S.C. §1681e(b), Plaintiff suffered actual damages, including but not limited to: harm to his credit score and credit opportunities, depression and anxiety, loss of appetite, stomach pain, nausea, headaches, chest pain and tightness, shortness of breath, irritability, sleep loss, feelings of fear, feelings of shame, difficulty concentrating, embarrassment and humiliation and harm to reputation.

84. The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

85. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Defendant Equifax in amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT II
## VIOLATIONS OF THE FCRA 15 U.S.C. § 1681g

86. Pursuant to 15 U.S.C. § 1681g(a)(1), credit reporting agencies are mandated to provide a consumer with all information in the consumer's file upon request from the consumer.

87. Defendant Equifax violated 15 U.S.C. § 1681g(a)(1), by failing to provide the Plaintiff with all information in his file after she requested it.

88. Equifax violated § 1681g(a)(1) by failing to provide Plaintiff with the original creditor name for certain collection accounts.

89. As a result of Equifax's conduct, action, and inaction, Plaintiff suffered damage as alleged above, including by example only and without limitation: deprived of important information, hampered ability to correct errors in his report, cost and time to search for the withheld information, frustration and anxiety, feelings of fear, feelings of worry, embarrassment and humiliation, and other emotional and mental distress.

90. The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

91. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT III
## VIOLATIONS OF THE FCRA 15 U.S.C. § 1681i

92. Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation and delete information that could not be verified as accurate and complete.

93. Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information included in Plaintiff's disputes.

94. Equifax violated 15 U.S.C. § 1681i(a)(5) by failing to promptly delete or modify the disputed information that was found to be inaccurate, incomplete or unverifiable.

95. As a result of Equifax's violations of 15 U.S.C. §1681i, Plaintiff suffered actual damages, including but not limited to: harm to his credit score and credit opportunities, depression and anxiety, loss of appetite, stomach pain, nausea, headaches, chest pain and tightness, shortness of breath, irritability, sleep loss, feelings of fear, feelings of shame, difficulty concentrating, embarrassment and humiliation and harm to reputation.

96. The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

97. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Defendant Equifax in amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT V
## VIOLATIONS OF THE FCRA 15 U.S.C. § 1681s-2(b)(1)

98. PRA violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct a reasonable investigation of Plaintiff's dispute(s) after his disputes were forwarded by Equifax.

99. PRA violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information forwarded by Equifax.

100. PRA violated 15 U.S.C. § 1681s-2(b)(1)(C)-(D) by failing to report back to Equifax what information was discovered or could have been uncovered upon a reasonable investigation of Plaintiff's dispute(s).

101. PRA violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to promptly delete disputed information—that was found to be inaccurate, incomplete or unverifiable—upon a lawful investigation and prevent that disputed information from re-reporting to Plaintiff's credit files.

102. As a result of Defendant PRA's violations of 15 U.S.C. §1681s-2(b)(1), Plaintiff suffered actual damages, including but not limited to: harm to his credit score and credit opportunities, depression and anxiety, loss of appetite, stomach pain, nausea, headaches, chest pain and tightness, shortness of breath, irritability, sleep loss, feelings of fear, feelings of shame, difficulty concentrating, embarrassment and humiliation and harm to reputation.

103. The violations by Defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

104. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT V
## VIOLATIONS OF THE FCRA 15 U.S.C. § 1692e

105. The FDCPA prevents debt collectors from making false representations and/or communications in connection with the collect of a debt.

106. PRA reported to Equifax that Plaintiff was indebted to it for unpaid credit account.

107. Plaintiff never obtained credit or a loan from PRA. Consequently, Plaintiff was confused when he observed the credit account list in his report by PRA.

108. Upon learning of PRA's claim he had a credit account; Plaintiff wrote a letter to PRA that disputed its claim regarding the account.

109. In his communication to PRA, the Plaintiff requested information that showed he owed a debt to PRA.

110. Additionally, Plaintiff asked PRA to cease its debt collection activity until PRA established that he owed a debt to PRA.

111. PRA did not provide Plaintiff with information that would establish that he owed PRA a debt.

112. PRA was unable to demonstrate it owned a debt belonging to Plaintiff because PRA did not purchase or obtain any debt from a creditor that he owed money.

113. Nonetheless, PRA continued to report to Equifax that Plaintiff owed the debt.

114. Not only did PRA fail to cease reporting the debt to Equifax but PRA did not take any action to correct the misrepresentation that the debt was not a credit account.

115. PRA violated 15 U.S.C. § 1692c by communicating with the Plaintiff after he demanded that it cease its communications with him.

116. PRA violated 15 U.S.C. § 1692e by falsely representing Plaintiff owed a debt that he did not owe.

117. PRA violated 15 U.S.C. § 1692e by reporting Plaintiff owed a debt that it knew, or should have known, the Plaintiff did not owe.

118. PRA violated 15 U.S.C. § 1692e by falsely characterizing the collection account as a credit account.

119. PRA violated 15 U.S.C. § 1692e by reporting Plaintiff had a credit account when it knew he did not have a credit account with PRA.

120. PRA violated 15 U.S.C. § 1692e by reporting that Plaintiff owed it for a debt that PRA knew it did not own.

121. As a result Defendant PRA's violations of 15 U.S.C. § 1692e, Plaintiff suffered actual damages, including but not limited to: harm to his credit score and credit opportunities, depression and anxiety, loss of appetite, stomach pain, nausea, headaches, chest pain and tightness, shortness of breath, irritability, sleep loss, feelings of fear, feelings of shame, difficulty concentrating, embarrassment and humiliation and harm to reputation.

122. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1692k(a)(1), 1692k(a)(2)(A), and 1692k(a)(3).

**JURY DEMAND**

123. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

**PRAYER FOR RELIEF**

WHEREFORE, your Plaintiff demands judgment for actual, statutory and punitive damages against all Defendants; for his fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court.

Dated: September 3, 2026

Respectfully submitted,

*/s/ Randall Steketee*

**Randall Steketee, Esq.**
**Attorney for Plaintiff**
254 W. 31st Street, 6th Floor
New York, NY 10001
Randall@steklawfirm.com
Phone: 917-819-2966